MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 150
Docket:      Pen-18-158
Argued:      May 15, 2019
Decided:     October 1, 2019

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

BEAL BANK USA

v.

NEW CENTURY MORTGAGE CORPORATION

HUMPHREY, J.

[¶1]   Beal Bank USA appeals from the decision of the Superior Court (Penobscot County, *A. Murray, J.*) "denying" its complaint to compel the assignment of a mortgage to Beal by the insolvent originating lender New Century Mortgage Corporation.[1]  Beal argues that, because it is the holder of the note secured by the mortgage, the court erred when it failed to apply the equitable trust doctrine to conclude that New Century holds the mortgage in trust for Beal and that Beal is entitled to an assignment of the mortgage.  Beal

---

[1]  The Superior Court treated the complaint as a motion to compel assignment and entered an order, rather than a judgment, denying the relief sought by Beal.  For purposes of our analysis, we view this as a distinction without a difference.

2

also argues that it produced sufficient independent evidence of ownership of the mortgage to compel an assignment.[2]  We disagree and affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts are either alleged in Beal's complaint or were found by the trial court and supported by record evidence.[3]  *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 3, 161 A.3d 696.

[¶3]  On September 29, 2006, the homeowners of the property at issue signed a promissory note listing New Century as the lender.  To secure the note, the homeowners executed a mortgage that identified New Century as the "lender" and Mortgage Electronic Registration Systems, Inc. (MERS), as the "nominee" for the lender.[4]  The note was transferred several times and eventually obtained by LNV Corporation, which held the note at the

---

[2]  Because many of the documents that Beal presented purporting to prove independent ownership of the mortgage were not admitted in evidence, we do not address further whether they were sufficient to demonstrate actual ownership.

[3]  Although the issue of whether New Century still owns the mortgage was not presented to the Superior Court and was inadequately briefed to us, we take judicial notice that New Century filed for Chapter 11 bankruptcy in April 2007.  *See King v. King*, 2013 ME 56, ¶ 4 n.1, 66 A.3d 593 (stating that this Court can take judicial notice of pleadings and docket entries in other cases); see *also* 11 U.S.C.S. §§ 101-1532 (LEXIS through Pub. L. 116-56); *see generally In re New Century TRS Holdings, Inc.*, 505 B.R. 431 (Bankr. D. Del. 2014); *In re New Century TRS Holdings, Inc.*, 407 B.R. 576 (Bankr. D. Del. 2009).  Beal presented no evidence that New Century retained the homeowners' mortgage after the issuance of the final bankruptcy order and termination of the bankruptcy estate.

[4]  With the exceptions of the identity of the lender and the amount of the debt, the language of the mortgage was identical to that in *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, ¶ 13, 96 A.3d 700.

commencement of this case. On October 30, 2008, MERS purported to assign the mortgage to LNV. On November 28, 2016, LNV filed a complaint alleging that it was the equitable owner of the mortgage because New Century held any interest it had in the mortgage in trust for LNV, as holder of the note, and seeking an order to compel New Century to assign "any interest" it held in the mortgage to LNV. Later, Beal was substituted as the plaintiff.

[¶4] On January 10, 2018, the Superior Court held a hearing on Beal's complaint; New Century did not appear.[5] Beal presented what appeared to be the original promissory note, a copy of the mortgage, several mortgage modification agreements, and correspondence and account information pertaining to the homeowners' loan and the property.

[¶5] On March 4, 2018, the Superior Court entered an order denying the relief sought by Beal and ruled that applying the equitable trust doctrine[6] in the manner Beal requested would be inconsistent with our ruling in *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700. After the court denied Beal's motion to reconsider, Beal timely appealed. M.R. App. P. 2B(c)(1).

---

[5] Although service had been made on New Century and New Century had not entered an appearance in this action, the Superior Court did not enter a default against New Century.

[6] *See infra* ¶ 7.

4

## II. DISCUSSION

[¶6] Beal argues that the Superior Court erred when it determined that the equitable remedy it seeks is precluded by our holding in *Greenleaf*. *See* 2014 ME 89, ¶¶ 10-17, 96 A.3d 700. When a trial court's judgment is based on a conclusion of law, we review the trial court's conclusions de novo. *Harris v. Woodlands Club*, 2012 ME 117, ¶ 17, 55 A.3d 449.

[¶7] Beal contends that, as the holder of the note secured by a mortgage, it has an "equitable pre-foreclosure right" to compel an assignment of that mortgage—a "right," it argues, that is distinct from, and therefore not precluded by, our holding in *Greenleaf*.[7] *See* 2014 ME 89, ¶¶ 10-17, 96 A.3d 700. As support, Beal relies on the equitable trust doctrine, which states that

> [o]ne who takes a mortgagee's title holds it in trust for the owner of the debt to secure [the debt for] which the mortgage was given. If a mortgage is given to secure negotiable promissory notes, and the notes are transferred, the mortgagee and all claiming under him will hold the mortgaged property in trust for the holder of the notes.

*Jordon v. Cheney*, 74 Me. 359, 361 (1883); *see also Wyman v. Porter*, 108 Me. 110, 120, 79 A. 371 (1911); *Stone v. Locke*, 46 Me. 445, 449 (1859).

---

[7] Beal acknowledges that it is "unable to obtain an assignment directly from the insolvent original lender [New Century]," which means that Beal is effectively arguing that the court should declare Beal to be the legal owner of the mortgage for purposes of a future foreclosure action.

[¶8]   Thus, Beal argues that, because it holds the note and is unable to obtain the mortgage by other means as a result of New Century's bankruptcy, and because New Century, as the mortgagee,[8] holds the mortgage "in trust" for Beal's benefit, Beal can therefore compel the assignment of the legal title to the mortgage.  *See U.S. Bank Nat'l Ass'n. v. Ibanez*, 941 N.E.2d 40, 54 (Mass. 2011) (stating that, under Massachusetts law, the holder of the note can obtain an "equitable order of assignment" of the accompanying mortgage).  Beal insists that its position is not inconsistent with our ruling in *Greenleaf* because it is pursuing a *pre-foreclosure* action in equity that is intended only to establish an existing "equitable (but not an actual) ownership interest in the underlying mortgage."

[¶9]   To evaluate Beal's claim, we first look to the underpinnings of our decision in *Greenleaf* to determine whether the equitable trust doctrine applies in this context and, if so, whether it operates to compel an assignment of the mortgage as Beal requests.  In *Greenleaf*, we held that for a party to have standing to foreclose it must, among other things, present proof of its status as holder of the note and owner of the mortgage.  2014 ME 89, ¶¶ 10-12, 96 A.3d 700.  In doing so, we rejected Bank of America's argument that it had

---

[8]   New Century's assignment to MERS, as "nominee," was identical to that in *Greenleaf*, and therefore conveyed only the power as nominee.  *See Greenleaf*, 2014 ME 89, ¶¶ 13-14, 96 A.3d 700.

standing to foreclose as the mortgagee based on MERS's purported assignment of the mortgage to it. *Id.* ¶¶ 13-17. We held that because MERS had acquired only the right to record the mortgage as the lender's nominee and not ownership of the mortgage, MERS could not grant to Bank of America a greater interest than it held and thus it could not assign ownership of the mortgage to the bank.

[¶10] We also rejected Bank of America's alternate argument that, even if there was no "formal assignment of the [m]ortgage," it nevertheless became the mortgagee once it took possession of the promissory note such that it could enforce the note. In effect, the bank argued there what Beal argues here: an assignment of the mortgage is "not even necessary in instances where . . . a mortgage is given to secure a promissory note."

[¶11] Although Beal concedes, as it must, that its physical possession of the note alone is not sufficient to establish standing to foreclose, *see Greenleaf*, 2014 ME 89, ¶¶ 10-17, 96 A.3d 700, it relies on Massachusetts case law to support its arguments that, in Maine, it has an equitable pre-foreclosure right in the mortgage and that it can compel an assignment of the mortgage from the mortgagee. This reliance is misplaced.

[¶12]  Beal cites *U.S. Bank, N.A. v. Ibanez,* 941 N.E.2d 40, 54 (Mass. 2011), for the proposition that it can obtain an equitable assignment of a mortgage held in trust by the mortgagee.  There, in holding that a bank failed to demonstrate that it held a mortgage in accordance with the statutory requirements for a nonjudicial power of sale foreclosure,[9] the Massachusetts Supreme Judicial Court rejected the bank's argument that, because it was in possession of the note, it had a "sufficient financial interest in the mortgage to allow [the bank] to foreclose."  *Id.* at 53.  In doing so, the court stated that, "the assignment of the note does not carry with it the assignment of the mortgage." *Id.* at 53-54.  Instead, the holder of the note can obtain a valid written assignment of the mortgage or seek an equitable assignment of the interest held "in trust" by the mortgagee.  *Id.* at 54.  Absent either of these, "the mortgage holder remains unchanged."  *Id.*

[¶13]  We decline to extend this reasoning, grounded in Massachusetts's power of sale foreclosure laws, to our mortgage and judicial foreclosure analysis pursuant to Maine law.  *See id.* at 49; *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 13, 2 A.3d 289; 14 M.R.S. §§ 6321-6325 (2018).

---

9  Unlike Massachusetts, Maine does not allow for the nonjudicial foreclosure of residential mortgages executed on or after October 1, 1993.  *See* 14 M.R.S. § 6203-A (2018) (allowing for nonjudicial foreclosure of mortgages given primarily for business, commercial, or agricultural purposes).

Additionally, the court in *Ibanez* did not imply that any such equitable assignment from the mortgagee to the note holder occurred automatically, nor that any such equitable assignment was proper in the circumstances of that case. *See id.* at 56 (Cordy, J. concurring) ("The plaintiff banks . . . have simply failed to prove that the underlying assignments of the mortgage that they allege (and would have) entitled them to foreclose ever existed in any legally cognizable form before they exercised the power of sale that accompanies those assignments.").

[¶14] Our holding in *Greenleaf* stands as an implicit rejection of Beal's argument here that the equitable trust doctrine effectively establishes ownership of a mortgage in the holder of its accompanying note. *See Greenleaf*, 2014 ME 89, ¶¶ 10-17, 96 A.3d 700. Although some courts continue to apply the dated equitable trust doctrine in the context of modern mortgage foreclosure actions, those courts do so under the foreclosure laws of their jurisdictions. *See, e.g.*, *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 292-93 (1st Cir. 2013) (citing Massachusetts's foreclosure law); *Ibanez*, 941 N.E.2d at 54. In Maine, its application would be fundamentally at odds with our holding in *Greenleaf*. *See Greenleaf*, 2014 ME 89, ¶¶ 10-17, 96 A.3d 700; *see also Saunders*, 2010 ME 79, 2 A.3d 289. Taken to its logical conclusion,

acceptance of Beal's argument would require us to hold that, once a party becomes the "holder"[10] of a note secured by a mortgage, that status would operate to automatically transfer ownership of the mortgage to that party, a construct that we implicitly rejected in *Greenleaf* and which would render our bifurcated standing analysis of the holder of the note and the owner of the mortgage entirely superfluous. *See Greenleaf*, 2014 ME 89, ¶¶ 10-12, 96 A.3d 700.[11]

[¶15] We therefore conclude that although the holder of the note may retain *some equitable interest* in the accompanying mortgage, any such interest, standing alone, does not equate to actual *ownership* of the mortgage nor is it sufficient to establish a "pre-foreclosure right" to compel its assignment. *See Greenleaf*, 2014 ME 89, ¶ 12, 96 A.3d 700; *see also Locke*, 46 Me. at 447-49 (concluding that "assignment of a note is not an assignment of the mortgage," but that possession of the note gives rise to an equitable interest and indispensable party status in future actions affecting the mortgage).

---

[10] In this context, a "holder" is a party "in possession of the original note that is indorsed in blank." *Greenleaf*, 2014 ME 89, ¶ 10, 96 A.3d 700.

[11] Further, Beal's equitable argument aside, Beal has failed to furnish evidence, in light of New Century's bankruptcy and the resulting termination of its bankruptcy trust, to demonstrate that New Century continues to be the owner of the mortgage, and we are loath to compel the assignment of any mortgage in which the identity of the mortgagee cannot be established with any degree of certainty by the holder of the note. *See Greenleaf*, 2014 ME 89, ¶ 22 n.13, 96 A.3d 700 (discussing the evidentiary burden for a plaintiff to obtain a foreclosure).

Accordingly, the court did not err in denying the relief sought by Beal to compel assignment of the mortgage here.[12]

The entry is:

Judgment affirmed.

---

Richard E. Briansky, Esq. (orally), Eckert Seamans Cherin & Mellott, LLC, Boston, Massachusetts, for appellant Beal Bank USA

Jonathan E. Selkowitz, Esq. (orally), and Frank D'Alessandro, Esq., Pine Tree Legal Assistance, Inc., Portland; Thomas A. Cox, Esq., Portland; and Andrew R. Sarapas, Esq., Strout & Payson, P.A., Rockland, for Amici Curiae Pine Tree Legal Assistance, Inc., and Maine Attorneys Saving Homes

Aaron M. Frey, Attorney General, and Kevin J. Crosman, Asst. Atty. Gen., Office of the Attorney General, Augusta, for Amicus Curiae Attorney General

John A. Doonan, Esq., and Reneau J. Longoria, Esq., Doonan, Graves & Longoria, LLC, Beverly, Massachusetts, for Amicus Curiae Caliber Home Loans Inc.

F. Bruce Sleeper, amicus curiae pro se

Penobscot County Superior Court docket number RE-2016-109
FOR CLERK REFERENCE ONLY

---

[12] Beal's argument that denying this relief will result in an "undeserved windfall" for the homeowners is unavailing as other means of enforcing the promissory note remain available to it.